

*cti*

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U S DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 17 2000

NANCY DOHERTY, CLERK
By _____
Deputy

| | |
|---|---|
| PATIENCE OYOYO AND | § |
| DR. KEVIN OYOYO, | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | § |
| | § |
| BAYLOR HEALTH NETWORK, INC., | § |
| | § |
| Defendant. | § |

Civil Action No. 3:99-CV-0569-L

ENTERED ON DOCKET

MAY 18 2000

U.S. DISTRICT CLERK'S OFFICE

## **MEMORANDUM OPINION AND ORDER**

Before the court are Defendant's Motion for Summary Judgment, filed March 13, 2000, and

Plaintiffs' Cross Motion for Summary Judgment, filed April 17, 2000. The court has carefully

considered the motions, responses, evidence submitted by the parties, and the applicable law. For

the following reasons, Defendant's Motion for Summary Judgment is **granted,** and Plaintiffs' Cross

Motion for Summary Judgment is **denied.**

### I.     **Factual and Procedural Background**

Plaintiff Patience Oyoyo ("Oyoyo") was employed as a Claims Analyst in the Claims

Management Department of Defendant Baylor Healthcare Network, Inc. ("Baylor").[1] Oyoyo began

her job at Baylor on May 29, 1997. Oyoyo is a black female of Nigerian national origin.

On March 30, 1998, Baylor's Claims Manager Debbie Outlaw ("Outlaw") met with Oyoyo

to discuss Oyoyo's attendance. Oyoyo had been absent from February 27-March 2, 1998, and was

---

[1]The facts contained herein are either undisputed or, where they are disputed, presented in the light
most favorable to Plaintiffs as the nonmovants.

**Memorandum Opinion and Order – Page 1**

29

also tardy on March 9, 25, and 30, 1998. Baylor's policies provide for up to three absences and five tardies in a six-month period. On April 30, 1998, Oyoyo was further counseled by Outlaw that she needed to improve her attendance and the quality of her work. Outlaw specifically discussed with Oyoyo that she had been absent or tardy on the above dates, and had an additional absence on April 20, 1998. As of April 30, 1998, Oyoyo's working hours were changed to 8:00 a.m. - 4:30 p.m., with a 30-minute lunch period and a 15-minute break. At the April 30th meeting, Outlaw also told Oyoyo that there had been continuing issues with the quality of her performance. Outlaw advised Oyoyo that "[i]mmediate and sustained improvement in [the] quality of [her] work"[2] was required, and that failure to improve would lead to termination of her employment.

At this same meeting, Oyoyo's local and long distance personal phone calls were also discussed. Outlaw reviewed with Oyoyo the previous meetings they had regarding this issue. Specifically, the issue of personal phone calls was first discussed with Oyoyo on June 13, 1997. On January 30 and April 10, 1998, Outlaw and Oyoyo again discussed the issue of personal phone calls. At these meetings, Outlaw advised Oyoyo that she could call home to check on her family, but that excessive personal phone calls would not be permitted. Outlaw continued to monitor Oyoyo's phone usage, noting lengthy outgoing calls on several occasions, including some long distance calls. At the April 30, 1998 meeting, Outlaw reminded Oyoyo that she had been counseled on three previous occasions regarding excessive personal phone calls. Outlaw informed Oyoyo that personal phone calls should be restricted to break and lunch periods, and that she should inform her manager if an emergency call needed to be made. Oyoyo was also told that if excessive personal phone calls

---

[2]Defendant's Appendix to its Motion for Summary Judgment ("Defendant's App.") at Exh. B-1.

**Memorandum Opinion and Order – Page 2**

continued, her employment would be terminated.   Although Oyoyo disagreed with Outlaw's criticisms; however, she stated that she understood what Outlaw was telling her, and what the consequences would be if the situation did not improve.

After the April 30, 1998 meeting, Oyoyo had unscheduled absences on May 14-19, 1998 and June 5, 1998.  Outlaw met with Oyoyo again on June 8, 1998 to discuss her attendance.  At that meeting, Oyoyo was given her final formal warning and was informed that one more unscheduled absence would result in Outlaw's recommending that she be terminated.  Oyoyo stated that she understood what had been discussed, and signed the memorandum documenting the meeting.

On May 14, 1998, Oyoyo filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining that the written warning she received on April 30th was given due to her Nigerian national origin and that because of her national origin she had been treated differently than her similarly situated co-workers.  Oyoyo had another unscheduled absence on June 23, 1998.  Outlaw terminated Oyoyo's employment with Baylor the next day, June 24, 1998.

Following her discharge, Oyoyo filed a second EEOC charge on July 7, 1998, alleging that she had been terminated in retaliation for having filed the discrimination charge.[3]  Oyoyo received her right to sue letter from the EEOC on both charges on December 17, 1998, and she filed this action against Baylor on March 16, 1999.  In her First Amended Original Complaint ("Complaint"),

---

[3]To some extent, both Oyoyo and Baylor have discussed the retaliation issue in their summary judgment briefing.  On May 5, 2000, the court denied Oyoyo's motion to amend her First Amended Complaint to add a retaliation claim.  Oyoyo's First Amended Complaint, which is the live pleading at issue, does not include a retaliation claim; therefore, this claim is not before the court and will not be addressed herein.

**Memorandum Opinion and Order – Page 3**

Oyoyo asserts claims for discrimination based on race, sex, age,[4] and national origin, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* Oyoyo also alleges state law claims for invasion of privacy and intentional infliction of emotional distress. Finally, Oyoyo's husband, Dr. Kevin Oyoyo ("Dr. Oyoyo"), brings a state law claim for loss of consortium. Baylor has moved for summary judgment on all of Plaintiffs' claims.

## II.    Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere

---

[4]Although Oyoyo has pleaded her age discrimination claim pursuant to Title VII, the court will construe her pleadings liberally and treat her age discrimination claim as one brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

**Memorandum Opinion and Order – Page 4**

conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id., Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

## III.   Defendant's Motion for Summary Judgment

Baylor contends that there is no genuine issue of material fact present in the summary judgment record with respect to any of Plaintiffs' claims, so that it is entitled to judgment as a matter of law. Each of Plaintiffs' claims will be addressed separately below.

A.   **Title VII Claims**

1.   **Race Discrimination**

Oyoyo has alleged Title VII claims for race, sex,[5] and national origin discrimination.  The court begins by addressing her race discrimination claim.  Baylor moves for summary judgment on this claim, arguing that it is barred because it was never made the subject of an EEOC charge. Alternatively, Baylor argues that Oyoyo's race discrimination claim fails because she has failed to set out a prima facie case of race discrimination.

Baylor argues that the court should dismiss Oyoyo's race discrimination claim because she has failed to exhaust her administrative remedies with regard to this claim.  A condition precedent to bringing suit on any Title VII claim is the timely filing of an EEOC charge.  *Young v. City of Houston,* 906 F.2d 177, 179 (5th Cir. 1990).  The scope of a Title VII suit filed thereafter extends no further than the scope of the investigation that can reasonably be expected to grow out of the charge of discrimination.  *Id.; Fine v. GAF Chemical Corp.,* 995 F.2d 576, 577-78 (5th Cir. 1993); *Chester v. American Telephone and Telegraph Co.,* 907 F. Supp. 982, 987 (N.D. Tex. 1994), *aff'd,* 68 F.3d 470 (5th Cir. 1995), *cert. denied,* 516 U.S. 1141 (1996).

It is undisputed that on her charge of discrimination filed May 14, 1998, Oyoyo checked only the "National Origin" box and did not check "Race."  Therefore, the question becomes whether Oyoyo's race discrimination claim is sufficiently related to her national origin discrimination claim because if reasonably would have fallen within the scope of the EEOC's investigation of her national

---

[5]In her response to Defendant's Motion for Summary Judgment, Oyoyo has withdrawn her sex discrimination claim.  Accordingly, it is dismissed without prejudice, and will not be addressed herein.  *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Plaintiffs' Response") at pp. 15-16.

**Memorandum Opinion and Order – Page 6**

origin claim. In some contexts, national origin and racial discrimination are "so closely related...as to be indistinguishable." *Bullard v. OMI Georgia, Inc.,* 640 F.2d 632, 634 (5th Cir. Unit B 1981). Race and national origin claims may sometimes be correlated with each other because of certain "historical or demographic facts." *Dennis v. Pan American World Airways, Inc.,* 746 F. Supp. 288, 291 (E.D.N.Y. 1990). Furthermore, when the group to which the plaintiff belongs "is of such an identifiable nature that the treatment afforded its members may be measured against that afforded [to] Anglos," a national origin claim may also state a claim for race discrimination. *See Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 970 (10th Cir. 1979). As a person of Nigerian heritage, Oyoyo is likely to be racially grouped or identified with blacks, and therefore her national origin claim can be correlated with her race claim. For this reason, issues of racial discrimination could be reasonably expected to grow from her charge of discrimination. Oyoyo has not failed to exhaust her administrative remedies on her race discrimination claim, and the court will not dismiss it for this reason.

Baylor's second argument in support of summary judgment on Oyoyo's race discrimination claim is that Oyoyo has allegedly failed to establish a *prima facie* case of race discrimination. Oyoyo has presented no direct evidence of discrimination; therefore, the court will examine her race discrimination claims under the well-established burden-shifting analysis articulated in *McDonnell Douglas v. Green,* 411 U.S. 792, 802-04 (1973). The *McDonnell Douglas* analysis first requires Oyoyo to establish a *prima facie* case of discrimination. 411 U.S. at 802. If she successfully does so, the burden then shifts to Baylor to explain the circumstantial evidence of discrimination by articulating a legitimate, nondiscriminatory reason for their actions. *Id.; Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253-56 (1981). If Baylor carries this burden, Oyoyo then must

**Memorandum Opinion and Order – Page 7**

demonstrate that Baylor's articulated rationale is pretextual, and that the real reason for its decision

was an intent to discriminate against her. *Id.; St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515

(1993).

To establish her *prima facie* case, Oyoyo must show that (1) she belongs to a protected class

of persons; (2) she suffered an adverse employment action; and (3) employees outside her protected

class were treated differently under nearly identical circumstances. *Mayberry v. Vought Aircraft Co.,*

55 F.3d 1086, 1090 (5th Cir. 1995). Oyoyo has satisfied the first element of her *prima facie* case

because she is black, and therefore she is a member of a class protected by Title VII. Under the

second prong of her *prima facie* case, Oyoyo must show that Baylor took adverse employment action

against her. Baylor does not argue that Oyoyo has not satisfied this prong of her *prima facie* case;

therefore, for purposes of this motion, the court will assume that Baylor took ultimate employment

action against Oyoyo.

Baylor argues that Oyoyo cannot satisfy the third element of her *prima facie* case of race

discrimination because she is unable to show that employees of other races were treated differently

than she was under nearly identical circumstances. The court agrees. Oyoyo has failed to set forth

evidence showing that the actions and decisions taken by Baylor with respect to her employment

were different than those actions taken against other non-black employees in similar circumstances.

Although the Complaint states that several other employees had more absences and more

performance errors than Oyoyo did, her pleadings are not competent summary judgment evidence,

and do not raise a fact issue with respect to her race discrimination claim. *Johnston v. City of

Houston,* 14 F.3d 1056, 1060 (5th Cir. 1994); *Jeffery v. Dallas County Medical Examiner,* 37 F.

Supp.2d 525, 530 (N.D. Tex. 1999). In her response to Baylor's motion, Oyoyo states that unnamed

**Memorandum Opinion and Order – Page 8**

employees were not disciplined for making between 5 and 29 errors in their work, whereas she was disciplined for making errors.[6]  Oyoyo supports this assertion with a collection of unauthenticated records allegedly from Baylor, some of which bear handwritten notations regarding errors made on various provider accounts.[7]  The author of these notations is unidentified.  These documents do not constitute competent summary judgment proof, and do not raise a fact issue whether Oyoyo was treated differently than similarly situated employees of other races.  Additionally, Oyoyo's evidence of her coworkers' performance errors is irrelevant to her discrimination claims, because it is undisputed that she was terminated for excessive unscheduled absences, not performance errors.

With the exception of two  instances involving white employees, one named  "Renee" and the other unnamed,[8] none of Oyoyo's summary judgment evidence reflects the race of the particular coworkers identified as having received different treatment than she.  Furthermore, Oyoyo's summary judgment proof does not establish that Oyoyo was reprimanded or terminated under circumstances "nearly identical" to those in which non-black coworkers were not disciplined.  For this additional reason, Baylor is entitled to summary judgment on Oyoyo's race discrimination claim.

Furthermore, even if one concluded that Oyoyo established a *prima facie* case of racial discrimination, she has failed to raise a genuine issue of material fact issue with respect to Baylor's argument that it terminated her employment for a legitimate, non-discriminatory reason: her poor

---

[6]Plaintiffs' Response at pp. 9-10.

[7]Plaintiffs' Appendix to Their Response to Defendant's Summary Judgment Motion and Cross Motion for Summary Judgment ("Plaintiffs' App.") at Exh. P2.

[8]Plaintiffs' App. at Exh. P9, p. 101.  The court will discuss these incidents later in this opinion.

**Memorandum Opinion and Order – Page 9**

attendance record. A business has a right to expect and demand that its employees be reliable. Businesses have deadlines and demands to meet. To be successful, a business must provide quality products and services and deliver them in a timely manner. These objectives simply cannot be accomplished with employees who have unsatisfactory attendance. Baylor's decision to discharge Oyoyo was made for legitimate business reasons, and Oyoyo has failed to raise a genuine fact issue that Baylor's proffered reason for terminating her was actually a pretext for discrimination. Therefore, for this additional reason, Baylor is entitled to summary judgment on Oyoyo's race discrimination claim.

## 2.   **National Origin Discrimination**

Oyoyo's second Title VII claim is that Baylor impermissibly discriminated against her because she is of Nigerian national origin. Baylor also moves for summary judgment on this claim, contending that it must fail because Oyoyo has not established an adverse employment action amounting to an ultimate employment action for purposes of Title VII liability. Baylor further asserts that it is entitled to summary judgment on Oyoyo's national origin claim because she has not shown that similarly situated peers were treated differently.

To satisfy the "adverse employment action" prong of her *prima facie* case, Oyoyo must show that Baylor took an "ultimate employment action" against her. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 705-07 (5th Cir.), *cert. denied,* 522 U.S. 932 (1997). Title VII focuses on ultimate employment decisions such as hiring, firing, granting leave, discharging, promoting, and compensating. *Id.* at 707; *Dollis v. Rubin,* 77 F.3d 777, 782 (5th Cir. 1995). The statute is not intended to address other employment-related decisions that may have some tangential effect on an ultimate employment decision but are not ultimate employment decisions in and of themselves. *Id.*

**Memorandum Opinion and Order – Page 10**

The Fifth Circuit has provided numerous examples of employment actions which are not ultimate employment decisions within the purview of Title VII. In *Mattern,* the court held that hostility from fellow employees, having tools stolen, and the anxiety resulting therefrom were not ultimate employment decisions. 104 F.3d at 707. Denial of administrative complaints and internal grievances also do not meet the standard. *Dollis,* 77 F.3d at 782. Changing an employee's work schedule, hours, or increasing an employee's workload are merely administrative decisions and do not constitute the type of ultimate employment decisions contemplated by Title VII. *Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir. 1998), *cert. denied,* 119 S. Ct. 1457 (1999). Furthermore, while formal reprimands may be ultimate employment decisions, informal criticisms are not. *Id.*

Baylor correctly contends that the majority of the acts complained of by Oyoyo in her Complaint are not "ultimate employment actions" as intended by Title VII. In her response to Baylor's motion, Oyoyo identifies the following actions as instances of discrimination: that she was not allowed to set her own working hours while other employees apparently did; that her telephone usage was monitored; and that some employees were given keys to the office, whereas she did not receive one.[9] These situations simply do not rise to the level of an ultimate employment action. *See Mattern,* 104 F.3d at 707; *Benningfield,* 157 F.3d at 377. Therefore, with respect to these claims, Oyoyo has failed to establish a *prima facie* case of national origin discrimination. The formal disciplinary action and Oyoyo's ultimate discharge do, however, constitute ultimate employment actions and will satisfy the second prong of her *prima facie* case. Therefore, the court must examine

---

[9]*See* Plaintiffs' Response at pp. 8-9; Plaintiffs' App. at Exh. P9, pp. 42-44, 74, 81, and 101-03.

**Memorandum Opinion and Order – Page 11**

whether Oyoyo has met the third element of her *prima facie* case – a showing that she was treated differently than similarly situated coworkers who are not Nigerian.

The court finds that Oyoyo has failed to establish this prong of her *prima facie* case. Oyoyo was disciplined and eventually terminated in part because she had too many unscheduled absences from work. In her Response, Oyoyo argues that she was treated differently from a white employee who was allegedly told to go home and collect workers compensation benefits after an on-the-job injury.[10] Oyoyo states that when she was warned and terminated for excessive absences, she was treated differently than this unidentified white coworker on account of her national origin. The court does not find that an inference of discrimination can be drawn from Baylor's responses to these differing factual scenarios. Oyoyo did not have an on-the-job injury and did not file a workers compensation claim. Moreover, there is no evidence in the record to show how many absences Oyoyo's comparator had (either related or unrelated to her workplace injury) as compared to Oyoyo, and how the situation was handled by Baylor. Oyoyo has failed to sufficiently raise a fact issue on this element of her *prima facie* case, and accordingly, Baylor is entitled to judgment as a matter of law on Oyoyo's national origin discrimination claim.

Finally, there is no genuine issue of material fact regarding Baylor's legitimate non-discriminatory reason for discharging Oyoyo. Baylor has established that it terminated Oyoyo due to her attendance problems, and Oyoyo has not raised a genuine fact issue showing that Baylor's stated reason for her discharge was pretextual. Accordingly, for this additional reason Baylor is entitled to summary judgment on Oyoyo's national origin claim.

---

[10]*Id.* at p. 9; Plaintiffs' App. at Exh. P9, pp. 95-98.

**Memorandum Opinion and Order – Page 12**

## B.   ADEA Claim

Oyoyo has also pleaded a claim pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*  Baylor moves for summary judgment on this claim.  Oyoyo has withdrawn her ADEA claim in her Response to Baylor's motion,[11] and therefore the court will dismiss this claim without further consideration.

## C.   State Law Claims

Oyoyo has also brought claims for invasion of privacy and intentional infliction of emotional distress under Texas law, and Dr. Oyoyo has pleaded a claim for loss of consortium.  For the reasons stated below, each of these claims must also be dismissed.

### 1.   Invasion of Privacy

Under Texas law, the elements of an invasion of privacy claim are 1) an intentional intrusion upon the solitude or seclusion of another or her private affairs, which 2) would be highly offensive to a reasonable person.  *Valenzuela v. Aquino,* 853 S.W.2d 512, 513 (Tex. 1993); *Wilson v. Sysco Food Services of Dallas,* 940 F. Supp. 1003, 1015 (N.D. Tex. 1996).  When considering an invasion of privacy claim in the employment context, it is important to consider whether the employee had a reasonable expectation of privacy in the area searched or matters investigated.  *K-Mart Corp. v. Trotti,* 677 S.W.2d 632, 638 (Tex. App. – Houston [1st Dist.] 1984, writ ref'd n.r.e.).  To maintain a claim for invasion of privacy, the intrusion must be unreasonable, unjustified, or unwarranted.  *Farrington v. Sysco Food Services, Inc.,* 865 S.W.2d 247, 253 (Tex. App. – Houston [1st Dist.] 1993, writ denied).

---

[11]*See* Plaintiffs' Response at pp. 15-16.

**Memorandum Opinion and Order – Page 13**

Oyoyo maintains that Baylor invaded her privacy by examining her telephone records, monitoring her phone calls, and photocopying her personal calendar. Even when Oyoyo's testimony pertaining to these facts is taken as true, Oyoyo has not sufficiently raised a genuine issue of material fact regarding her invasion of privacy claim. The telephone records and phone calls that were monitored by Baylor were those made and received by Oyoyo on Baylor's telephone during working hours. Oyoyo was provided with a phone for the purpose of conducting business related to her employment with Baylor. The record reflects that Baylor was legitimately concerned about the amount of time Oyoyo was on the phone for non-business reasons, as well as her use of Baylor's phone in placing personal long distance calls. Because the phone was clearly provided for business purposes, the court cannot find that Oyoyo had a legitimate privacy interest in her use of Baylor's office phone. Baylor's actions in investigating and monitoring Oyoyo's phone usage were reasonable and justifiable under the circumstances presented, and Oyoyo cannot recover for invasion of privacy based on those actions.

Oyoyo also cannot recover for invasion of privacy based on the incident wherein Baylor copied her personal calendar. Although the record evidence regarding this incident is not entirely clear, it appears to the court that Outlaw photocopied portions of Oyoyo's wall calendar after she noticed that Oyoyo had written derogatory remarks about her on the calendar. Oyoyo admits to writing the offensive comments about Outlaw on her calendar, that the calendar was displayed on the wall of her cubicle, and that "I wasn't hiding it. If I was hiding it, I wouldn't put it over there."[12]

---

[12]Defendant's App. at Exh. A-3, p. 130.

**Memorandum Opinion and Order – Page 14**

Oyoyo cannot have any reasonable expectation of privacy in items that she admittedly made no effort to keep private. Therefore, Oyoyo's invasion of privacy claim must be dismissed.

### 2. Intentional Infliction of Emotional Distress

Oyoyo's next claim against Baylor is a claim for intentional infliction of emotional distress under Texas law. To recover under this theory, Oyoyo must show that 1) Baylor acted intentionally or recklessly; 2) the conduct was extreme and outrageous; 3) Baylor's conduct caused her emotional distress; and 4) the emotional distress she suffered was severe. *Hirras v. Nat'l R.R. Passenger Corp.,* 95 F.3d 396, 400 (5th Cir. 1996); *Mattix-Hill v. Reck,* 923 S.W.2d 596, 597 (Tex. 1996). "Only in the most unusual cases" is the employer's conduct extreme and outrageous enough to move outside the realm of an ordinary employment dispute. *Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 654 (5th Cir. 1994). In such cases, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hirras,* 95 F.3d at 400 (*quoting Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993)). Mere insults, indignities, annoyances, petty oppression, or other trivialities do not give rise to an intentional infliction of emotional distress claim. *Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31, 33 (5th Cir. 1992).

Oyoyo argues that Baylor caused her emotional distress by monitoring her phone records and calls, transferring her phone "upstairs" so that her husband and other relatives could not reach her, photocopying her calendar in the incident described above, and making derogatory remarks about her food and use of the restrooms. The record evidence regarding the comments about Oyoyo's food and restroom use consists of the following: an affidavit from a coworker stating that Oyoyo was embarrassed when someone made derogatory comments about her fish soup and a memorandum that

Memorandum Opinion and Order – Page 15

Oyoyo testified was placed on her desk entitled "Restroom Use Policy."[13]  This memorandum is merely addressed to "Staff" from "Management" and is not specifically directed toward Oyoyo, is not printed on Baylor letterhead, and does not reflect that it was authored by anyone at Baylor.  In actuality, the memorandum appears to be a workplace prank distributed among coworkers.  This type of workplace joking is common throughout corporate America and cannot be policed by the courts. At any rate, even if Oyoyo did not appreciate the humor in the memorandum, both the memorandum and the comments regarding Oyoyo's soup are, at most, the type of petty annoyance specifically excluded by the applicable case law from an action for intentional infliction of emotional distress. Furthermore, as the court has stated above, Baylor's actions with respect to Oyoyo's telephone use and the incident with her calendar were reasonable and justified under the circumstances of this case. These incidents also will not support Oyoyo's emotional distress claim.  Because Oyoyo has failed to raise a genuine issue of material fact with respect to this claim, it must be dismissed.

### 3.   Loss of Consortium

Oyoyo's husband Kevin Oyoyo sues Baylor for loss of consortium, stating that:

> [o]wing to Defendant's egregious conduct First Plaintiff suffered depression and psychological trauma making her to be withdrawn, distraught, disoriented, disillusioned and despondent.  In consequence Second Plaintiff suffered loss of First Plaintiff's society, affection, companionship and support.[14]

Loss of consortium claims are derivative.  *Motor Express, Inc. v. Rodriguez,* 925 S.W.2d 638, 640 (Tex. 1996).  Where liability has not been established on the nonderivative claim, loss of consortium claims fail as a matter of law.  *Id.*  Furthermore, loss of consortium damages are not recoverable

---

[13]Plaintiffs' App. at Exhs. P1 and P6.

[14]Complaint at p. 3.

**Memorandum Opinion and Order – Page 16**

where the nonderivative claim did not result in physical injury. *Brewerton v. Dalrymple,* 997 S.W.2d 212, 217 (Tex. 1999); *Browning-Ferris Indus. v. Lieck,* 881 S.W.2d 288, 294 (Tex. 1994). Dr. Oyoyo's loss of consortium claim fails on both of these grounds. First, the court has determined that Baylor is not liable to Mrs. Oyoyo on any of her claims. Therefore, as a derivative claim, Dr. Oyoyo's loss of consortium claim fails as well. Secondly, Mrs. Oyoyo has set forth no competent summary judgment showing that any act or omission of Baylor caused her physical harm. For this additional reason, Dr. Oyoyo's claim fails as a matter of law. Baylor is entitled to summary judgment on the loss of consortium claim.

**IV.**   **Plaintiffs' Cross Motion for Summary Judgment**

The deadline for dispositive motions established by the court in this case was March 13, 2000.[15] Plaintiffs filed their Cross Motion for Summary Judgment on April 17, 2000. Plaintiffs did not request, or receive leave of court to file their dispositive motion over a month past the relevant deadline. For this reason alone, the court need not consider Plaintiffs' Cross Motion for Summary Judgment. Furthermore, in light of the court's ruling on Defendant's Motion for Summary Judgment, granting Plaintiffs' Cross Motion for Summary Judgment would be entirely inconsistent with granting Defendant's Motion for Summary Judgment. Accordingly, Plaintiffs' Cross Motion for Summary Judgment is **denied.**

**V.**   **Conclusion**

For the reasons stated herein, there is no genuine issue of material fact regarding any of Plaintiffs' claims, and Defendant's Motion for Summary Judgment is **granted.** Plaintiff Patience

---

[15]*See* Order entered March 8, 2000.

**Memorandum Opinion and Order – Page 17**

Oyoyo's claims for race discrimination, national origin discrimination, invasion of privacy, and intentional infliction of emotional distress are all **dismissed with prejudice.**   Plaintiff Kevin Oyoyo's claim for loss of consortium is also **dismissed with prejudice.**  Plaintiff Patience Oyoyo has withdrawn her claims for sex discrimination and age discrimination.  Accordingly, these claims are **dismissed without prejudice.**   Plaintiffs' Cross Motion for Summary Judgment is **denied.** Judgment will be entered by separate document.

     **It is so ordered** this *17th* day of May, 2000.

                                  Sam A. Lindsay
                                  United States District Judge

**Memorandum Opinion and Order – Page 18**